No. 16,258.

RUFFINI ET AL. *v.* AVARA, CONSERVATOR.
(220 P. [2d] 355)

Decided May 1, 1950.   Rehearing denied June 19, 1950.

Mr. A. T. STEWART, Mr. LAWRENCE THULEMEYER, for plaintiffs in error; Mr. A. L. ROTENBERRY, Mr. CARL M. PERRICONE, for plaintiffs in error on petition for rehearing.

Mr. CHAS. E. SABIN, Mr. ROBERT R. SABIN, for defendant in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared

in the trial court, where defendant in error was plaintiff and plaintiffs in error were defendants.

The suit was instituted for the purpose of procuring the cancellation of conveyances made by Burk to defendant Mike Petramala, and Frances Petramala, of a ranch consisting of 2,160 acres of land in Otero county; to void transfers of personal property made to all the defendants; and to secure cancellation of a contract bearing the signatures of Burk and the defendant Mike Petramala. Since the trial of the case, Burk has been formally adjudicated a mental incompetent and appears here by his conservator Oscar Avara.

The complaint alleged as grounds for the relief sought, that "John A. Burk is now and at all times hereinafter mentioned has been mentally incompetent and incapable, unassisted, of properly managing and caring for his property," and that the transactions of which complaint is made were procured by defendants by "fraud, deceit, and the exercise of an undue influence," causing Burk to enter into a contract dated July 2, 1947, for the sale of real and personal property, without consideration, and as a part of a concerted plan to fraudulently procure the property of said John A. Burk. These allegations are denied by defendants.

Trial was to the court, resulting in findings and judgment for plaintiff. Defendants, seeking a reversal of the judgment, have sued out a writ of error. The points urged by them as grounds for reversal are stated in their brief as follows:

"1. There was no evidence to prove that John A. Burk is and has been mentally incompetent. (Specification of points: 5, 6, and 4.). 2. The overwhelming preponderance of the evidence is against the findings of the trial court. (Specification of points: 2, 3, 4, and 6.) 3. The trial court misconstrued the evidence and its findings that the sale price was inadequate is contrary to the evidence and the law. (Specification of points: 6, 1, and 4.) 4. The evidence adduced proved the con-

sideration was adequate and the transaction fair. (Specification of points: 7, 2, 1, and 3.)" The points upon which defendants thus rely are directed solely to the sufficiency of the evidence to sustain the judgment.

The facts are fully set out in the findings of the trial court, as follows:

"The plaintiff, John A. Burk, is a man of about 42 years of age, and has spent most of his life on an isolated cattle ranch, the greater portion of which time he lived with his father and apparently their business dealings were carried on together. After the death of the father, plaintiff has continued to reside alone on said ranch and under somewhat squalid circumstances. The plaintiff and his father had apparently accumulated the ranch property and a considerable number of livestock and had money in the bank. The plaintiff had dealt with his neighbors, buying and selling livestock and also had made a few personal loans. The principal actor among the defendants is Mike Petramala, and the other two defendants appear principally as financial backers of Mike Petramala. Petramala operates a large beet farm and deals in livestock. He became acquainted with plaintiff some two years prior to the inception of this suit. His first dealings were the placing of cattle upon the ranch of the plaintiff for the purpose of pasturage, and further deals have also been made between the two in the exchange of livestock and buying and selling feed.

"On or about the second day of July, 1947, a contract was entered into by the plaintiff Burk, and the three defendants whereby plaintiff agreed to deed 2,160 acres of land, five horses, and some forty-seven head of cattle for $8,000; $2,000 to be paid upon the signing of the agreement and an additional sum of $6,000 to be paid when the abstracts were found satisfactory. The agreement specifically states that the real property has been leased for oil and that all rentals due under said lease should be paid to Burk, but any oil produced thereon

should belong to the second parties. The defendants claim that other oral agreements were coupled with this written agreement to the effect that Burk should be permitted to live upon the property as long as he desired and that defendants would erect a suitable house within which the said Burk might live. That the defendant Petramala would also pay the said Burk $50.00 a month in consideration of his taking care of the cattle on said ranch as long as the price of cattle warranted such payment. These latter agreements were not incorporated in the written agreement. The defendants paid the $2,000 referred to in the agreement. Shortly thereafter, the defendant Petramala borrowed $2300 from the said John A. Burk, giving therefor his note without further security, and still later on, the sum of $1,000 was paid by the plaintiff to the defendant Petramala; the contention of the plaintiff being that it was a further loan, and the contention of the defendant being that the thousand dollars was given by Burk to Petramala for the purpose of buying furniture for the house in question. [This $1,000 was deposited with the clerk of the trial court by defendants.]

"Nine days after the execution of the agreement and prior to the time when the abstracts had been examined, the plaintiff Burk made a deed of conveyance to the defendants for the real property described in the complaint, which deed purported to receipt for the consideration and did not mention the oral agreements claimed by the defendants to have been contemporaneous with the original agreement; and shortly thereafter, the defendant Petramala started the erection, or reconstruction and addition to the dwelling house on the premises, and for two months, or such time as elapsed between the making of the agreement, and the bringing of the suit, paid the $50.00 per month alleged to have been within the oral agreement. At the time of the commencement of the lawsuit, the defendants, or some of them, had acquired title to all of the real estate of the plaintiff,

practically all of his personal property, and $1300 in cash more than they had paid him."

The trial court found the value of the real estate to be $18,360.00, and the value of the cattle to be $3,758.00. The value of the improvements placed upon the land by defendant Petramala was fixed by the court at $1,212.53. The findings and conclusions of the court, upon which judgment was entered, are in part as follows:

"The Court finds that the plaintiff, John A. Burk, is now and at all times during the negotiations heretofore referred to was and has been mentally incompetent and incapable unassisted of properly managing and caring for his property. The Court finds that no consideration at the time of the commencing of this lawsuit had passed to the plaintiff for the conveyance and transfers at that time made, and the Court further finds that the consideration mentioned in the said agreement was grossly inadequate even had it been paid."

\* \* \*

"The Court is of the opinion that at the time of the execution of the agreement, marked Exhibit "A", and introduced in evidence as Plaintiff's Exhibit "D", the plaintiff Burk had not the mental capacity to enter into such an agreement and the same was entered into by the defendants as a part of a concerted plan to fraudulently procure the property of the plaintiff. The Court is of the opinion that all of the property procured by the defendants from the plaintiff should be returned to him, together with $2300 in cash procured by the defendants since that time; that the promissory note given by the defendant Petramala to the plaintiff Burk should be surrendered and cancelled and that the agreement signed by the plaintiff, and the three defendants should be cancelled and held for naught and that the deed of conveyance by the plaintiff and to the defendant Petramala and his wife should be cancelled and held for naught.

"It further appears to the Court that the value of

the improvements placed on said property should be charged to the plaintiff, and credit therefor be given the defendants in this judgment, and it appearing right and proper so to do," * * *.

Dr. J. L. Rosenbloom, a psychiatrist at the Colorado State Hospital, testified that he had examined Burk and found that "he would probably fall into the actual group of mental defectives in the upper moron level," that he is without mental capacity to care for and manage his property; that his ideas were childish; and that he was a person who would be easily subjected to the influence and suggestions of others. Burk was called as a witness and testified at great length, both on direct and cross-examination, during the course of which the trial court had full opportunity to form an opinion concerning his mentality and his ability to manage and care for his property. We do not deem it necessary to detail the evidence which tends to support the findings of the trial court. It is sufficient to say that we have carefully considered the entire record, and are of the opinion that there is ample competent evidence to support the judgment.

The admitted facts, reduced to their essence, are that the defendants obtained all of Burk's property, real and personal, together with $1,300.00 more in cash than was paid to him by them, and that no deed of trust, mortgage, or security of any kind was given to secure the payment of the monies admittedly due Burk. These circumstances in themselves would seem to indicate a lack of capacity to manage property, and tend strongly to support the conclusions of Dr. Rosenbloom concerning Burk's mental condition.

Defendants rely upon the case of *Hanks, Conservator v. McNeil Coal Corporation*, 114 Colo. 578, 168 P. (2d) 256, in which we affirmed the judgment of the trial court sustaining the legality of a sale of property against the claim of incapacity of the vendor. In that case the facts were not comparable to those here present.

We there recognized the rule which we consider applicable to the case at bar, and stated: "Even though a mental condition may not amount to legal insanity, it may be sufficient to result in an inequality between the parties properly to be considered in connection with circumstances of unfair dealing and inadequacy of the consideration in determining whether a transaction was vitiated by fraud, either actual or constructive."

In *Dittbrenner v. Myerson,* 114 Colo. 448, 167 P. (2d) 15, we held that fraud may be presumed from the circumstances and condition of the contracting parties to prevent advantage being taken of the weakness or necessities of one of them, and stated: "The essential condition precedent to the applicability of this doctrine is an 'inequality' between the parties; there must be weakness on the one side and advantage taken of that weakness on the other, and 'It must appear that the dominant party either brought about the unevenness in the conditions, or, finding it ready to his hand, utilized and traded on it to extract from the servient party a gift or contract which he would not otherwise have made.' Bower on Actionable Non-Disclosure, p. 390, §428."

In the Dittbrenner case we quoted with approval from *Aylesford v. Morris,* 8 Ch. App. 484, the following: " ' * * * when the relative position of the parties is such as prima facie to raise this presumption, the transaction cannot stand unless the person claiming the benefit of it is able to repel the presumption by contrary evidence, proving it to have been in point of fact fair, just, and reasonable.' " We also in that case approved the following statement of the rule which is applicable to the case at bar: " 'The principle on which a court of equity acts in relieving against transactions on the ground of inequality of footing between the parties is not confined to cases where a fiduciary relation is shown to exist, but extends to all the varieties of relations in which dominion may be exercised by one over another, and

applies to every case where influence is acquired and abused, or where confidence is reposed and betrayed.' *Sears v. Hicklin*, 13 Colo. 143, 148, 21 Pac. 1022, quoting from Kerr, Fraud & Mistake 183."

The foregoing principles are well established in the law (1 Story's Eq. Jur. [14th ed.] p. 339, §355), and there is substantial evidence as appears in the record in the instant case, tending to prove all essential elements prerequisite to their application.

Although conflicting, if there is sufficient evidence to sustain the findings of the trial court, the judgment entered thereon will not be disturbed on review.

The judgment is accordingly affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Jackson concur.